UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRIMAR SYSTEMS INC, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>RUCKUS WIRELESS, INC.,<br><br>Defendant. | Case Nos. 16-cv-00186-SI, 16-cv-00558-SI, 16-cv-00624-SI, 16-cv-00897-SI<br><br>**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 144, 146 |

Before the Court are defendants' Motions for Summary Judgment. Dkt. No. 144 (Defs' '760 MSJ); Dkt. No. 146 (Defs' '825 MSJ).[1] Having reviewed the parties' submissions, the Court hereby GRANTS both motions pursuant to Fed. R. Civ. P. 56.

**BACKGROUND**

Plaintiff Chrimar Systems Inc. and Chrimar Holding Company LLC (collectively, "Chrimar") filed patent infringement actions against Juniper Networks Inc. ("Juniper"), Ruckus Wireless Inc. ("Ruckus"), Netgear Inc. ("Netgear"), and Fortinet Inc. ("Fortinet") (collectively, "defendants") on July 1, 2015, in the Eastern District of Texas. *See* Dkt. No. 1 (Complaint). The complaint alleged infringement of four patents held by Chrimar: U.S. Patent Nos. 8,115,012 ("'012 patent"), 8,942,107 ("'107 patent"), 8,902,760 ("'760 patent"), and 9,019,838 ("'838 patent"). *Id.* The patents generally relate to ethernet connection technology. *Id.* In December 2015, the actions were transferred to the Northern District of California. Dkt. No. 89 (Response to Motion to Stay).

---

[1] Chrimar filed suit against each defendant creating four separate suits. The Motion for Summary Judgment for the '760 patent is the same across all four suits. For convenience, the dockets citations refer to the docket in Case No.: 3:16-cv-00186-SI. Additionally, all citations to page numbers refer to the ECF branded number in the upper right corner of documents.

On July 8, 2016, defendant Juniper filed petitions for Inter Partes Review ("IPR") of the four patents and was later joined by defendants Ruckus and Netgear. Dkt. No. 126 at 2 (CMC Statement). Specifically, Juniper, Ruckus and Netgear challenged original claims 73 and 145 in the '760 patent. Dkt. No. 144 at 5 (Defs' '760 MSJ). On September 26, 2016, this Court stayed the patent infringement actions until the Patent Trial and Appeal Board ("PTAB") reached final written decisions with respect to the four IPR petitions. Dkt. No. 96 at 10 (Order Granting Motion to Stay).

An ex parte reexamination was filed by a third party on the '760 patent prior to the PTAB's final written decision, and claims 73-100, 104-169, and 173-219 were amended and found patentable; amended claims 73 and 145 are of particular relevance for the instant motion regarding the '760 patent. Dkt. No. 122 at 2; *see* Dkt. No. 144 at 5 (Defendants' '760 MSJ). Claim 145's amendments modified the claim's dependencies but did not otherwise change the language of claim 145 itself. *Compare* Dkt. No. 149 at 8 *with* Dkt. No. 144 at 3-4. Amended claim 145 reads:

> The BaseT Ethernet system according to any one of claims 73, 82- 91, 94-100, 104-107, 108-121, 127-132, 134-139, or 140-144 wherein the piece of BaseT Ethernet terminal equipment is a powered-off piece of BaseT Ethernet equipment.

Dkt. No. 144 at 3-4 (amended claim 145 in the '760 patent no longer depends on claims 101-103). Claim 73's amendments included the additional limitation of "the piece of central network equipment is a BaseT Ethernet hub[.]" Dkt. No. 144 at 3 (Defs' '760 MSJ). The PTAB did not review the '760 patent's amended claims that were found patentable during the ex parte reexamination, including claims 73 and 145. Dkt. No. 144 at 4 (Defs' '760 MSJ).

On April 26, 2018, the IPR proceeding found original claim 73 and 145 in the '760 patent invalid based on prior art. Dkt. No. 144 at 5 (Relevant prior arts include Hunter et al., PCT Publication No. WO 96/23377 (published Aug. 1, 1996) ("Hunter") and Bulan et al., U.S. Patent No. 5,089,927 (issued Feb. 18, 1992) ("Bulan")) (Defendants' '760 MSJ). Chrimar appealed all four of the PTAB's final written decisions to the U.S. Court of Appeals for the Federal Circuit. Dkt. No. 126. The Federal Circuit upheld the PTAB decision, including that original claims 73 and 145 of the '760 patent were invalid based on prior art. *Id.* Chrimar filed a petition for Writ of Certiorari in the United States Supreme Court challenging the Federal Circuit's affirmations. *Id.* On February 24, 2020, the Supreme Court denied the petition. *Id.*

On March 21, 2019, Chrimar sent letters to each of the defendants' outside counsel alleging infringement of U.S. Patent No. 9,812,825. Dkt. No. 146 at 8 (Defs' '825 MSJ). The letter states, in relevant part:

> As you know, we represent Chrimar Holding Company, LLC and Chrimar Systems, Inc. (collectively, "Chrimar") in connection with certain intellectual property matters, including Chrimar's lawsuit with Juniper Networks Inc. ("Juniper"). I write to inform you that besides the Chrimar patents already asserted against Juniper, Juniper also infringes U.S. Patent No. 9,812,825 ("the '825 patent," attached). Chrimar contends that at least the following products sold by Juniper (identified by product type and model number) infringe at least one claim of the '825 patent.

*Id.* (the letters to the defendants are substantively the same). In the letters, Chrimar lists defendants' products that allegedly infringe at least one claim of the '825 patent's 68 claims. Dkt. No. 146 at 6 n.2 (Chrimar listed 98 Juniper products, 70 Netgear products, 47 Fortinet products, and 32 Ruckus products) (Defendants' '825 MSJ). On May 23, 2019, the '825 patent expired. *Id.* at 8.

On December 16, 2019, this Court lifted the stay. Dkt. No. 123 (Order Lifting Stay). On February 7, 2020, Chrimar filed its third amended complaint ("TAC") across all four lawsuits, alleging four causes of action for infringement of: (1) the '107 Patent, (2) the '760 Patent, (3) the '838 Patent, and (4) the '825 Patent. Dkt. No. 129 (TAC). Chrimar's TAC pleaded infringement of the '760 patent's *amended* claim 145 and, for the first time, alleged infringement of the '825 patent.[2] Dkt. No. 129 at 3 (TAC). Chrimar argues defendants infringe claim 97+145 which has limitations based on claims 73, 95, 96, and 97. *Id.* Defendants filed a Motion to Strike, or in the alternative, to Dismiss the first cause of action of plaintiff's TAC for infringement of the '107 patent. Dkt. No. 131. The Court dismissed the '107 patent cause of action with prejudice. Dkt. No. 136. On May 22, 2020, defendants filed the instant Motions for Summary Judgment. Dkt. No. 144 (Defs' '760 MSJ); Dkt. No. 146 (Defs' '825 MSJ).

---

[2] In the TAC, Chrimar initially argued defendants infringe claim 73+145 and claim 97+145 of the reexamined '760 patent. *See* Dkt. No. 144-4, *Exhibit 1*. However, Chrimar withdrew "its allegation that defendants infringe claim 73+145 (*i.e.*, amended claim 145 across 73)" and argues instead its allegation regarding amended claim 145 involves only 97+145 (i.e., only amended claim 145 across 97). Dkt. No. 149 at 6 n.2 (Opp. to '760 MSJ).

3

**LEGAL STANDARD**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and . . . is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of showing no genuine issue of material fact exists. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). The moving party, however, has no burden to disprove matters for which the non-moving party will bear the burden of proof at trial. The moving party need only demonstrate to the Court an absence of evidence to support the non-moving party's case. *Id.* at 325. Once the moving party has met its burden, the burden shifts to the nonmoving party to "set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'" *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex,* 477 U.S. at 324). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . [is] insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986).

In deciding a summary judgment motion, the Court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Id.* at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment." *Id.* However, conclusory, speculative testimony is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp.,* 594 F.2d 730, 738 (9th Cir. 1979). The evidence the parties present must be admissible. Fed. R. Civ. P. 56(c)(2).

**DISCUSSION RE ISSUE 1**
**Motion for Summary Judgment on U.S. Patent 8,902,760**

**I.   Patent Validity**

"A patent shall be presumed valid." 35 U.S.C. § 282.[3] "Each claim of a patent (whether in

---

[3] The '760 patent was filed before the implementation of the America Invents Act. All applicable statutes are cited to their appropriate pre-America Invents Act statute.

4

1  independent, dependent, or multiple dependent form) shall be presumed valid independently of the
2  validity of other claims; dependent or multiple dependent claims shall be presumed valid even
3  though dependent upon an invalid claim." 35 U.S.C § 282. A patent claim is invalid for obviousness
4  "if the differences between the subject matter sought to be patented and the prior art are such that
5  the subject matter as a whole would have been obvious at the time the invention was made to a
6  person having ordinary skill in the art . . . ." 35 U.S.C. § 103. "The burden of establishing invalidity
7  of a patent or any claim thereof shall rest on the party asserting such invalidity." 35 U.S.C. § 282.

8  Here, defendants argue the IPR's final invalidity decision, affirmed in its entirety by the Federal Circuit, renders amended claim 145 invalid and Chrimar is precluded from re-litigating the issue of amended claim 145's validity. Dkt. No. 144 at 5 (Defs' '760 MSJ). Specifically, the IPR found the '760 patent's original 145 claim obvious in relation to prior art. *Id.* Thus, the Court must decide whether Chrimar is precluded from re-litigating amended claim 145's validity in light of the Federal Circuit's final decision.

## II.     Issue Preclusion

"Issue preclusion (sometimes called collateral estoppel) bars re-litigation of issues adjudicated in an earlier proceeding . . . ." *Roche Palo Alto LLC v. Apotex, Inc.*, 526 F. Supp. 2d 985, 994 (N.D. Cal. 2007), *aff'd,* 531 F.3d 1372 (Fed. Cir. 2008). The Federal Circuit splits the analysis in two parts. *Soverain Software LLC v. Victoria's Secret Direct Brand Mgmt., LLC*, 778 F.3d 1311, 1314 (Fed. Cir. 2015).

First, "the law of the regional circuit [applies] to the general *procedural* question of whether issue preclusion applies." *Soverain*, 778 F.3d at 1314 (emphasis added) (citing *RF Del., Inc. v. Pac. Keystone Techs., Inc.,* 326 F.3d 1255, 1261 (Fed. Cir. 2003)). In the Ninth Circuit, issue preclusion has three requirements: (1) "the first proceeding ended with a final judgment on the merits," (2) "the party against whom collateral estoppel is asserted was a party or in privity with a party at the first proceeding," and (3) "the issue necessarily decided at the previous proceeding is identical to the one which is sought to be relitigated." *Roche Palo Alto LLC*, 526 F. Supp. 2d at 994–95 (citing *Reyn's Pasta Bella, LLC v. Visa USA, Inc.,* 442 F.3d 741, 746 (9th Cir 2006)).

5

Second, the law of the Federal Circuit applies "to questions involving *substantive* issues of patent law." *Soverain*, 778 F.3d at 1314 (emphasis added) (citing *Ohio Willow Wood Co. v. Alps S., LLC,* 735 F.3d 1333, 1342 (Fed. Cir. 2013)). These substantive issues include issue preclusion questions implicating "substantive patent law issues[] or [questions implicating] the scope of [the Federal Circuit's] previous decisions." *Id*. at 1314 (citing *RF Del., Inc.*, 326 F.3d at 1261).

### A.     Ninth Circuit Procedural Threshold Inquiry

**--- Final Judgment on the Merits.** Defendants seek to preclude Chrimar's cause of action regarding the '760 patent based on the IPR's final decision wholly affirmed by the Federal Circuit. Dkt. No. 144 at 8 (Defs' '760 MSJ). The IPR's final decision found the challenged claims of the original '760 patent, including original claim 145, obvious over the prior art Hunter and Bulan. *Id.* at 5. Original claim 73 and 145 in the '760 patent were deemed invalid. *Id.* Chrimar filed a petition for Writ of Certiorari in the United States Supreme Court challenging the Federal Circuit's affirmations, which was denied. *Id.* The IPR ended with a final judgment on the merits, affirmed by the Federal Circuit.

Chrimar argues issue preclusion does not apply because defendants' burden of proof is higher in the federal district court than before the PTAB. Dkt. No. 149 at 12 (The burden in the PTAB is based on the preponderance of the evidence, and the burden in the district court is based on clear and convincing evidence) (Opp. to '760 MSJ). This argument is unpersuasive. "[Supreme Court precedent] and the Restatement make clear that issue preclusion is not limited to those situations in which the same issue is before two *courts*. Rather, where a single issue is before a court and an administrative agency, preclusion also often applies." *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 148 (2015) (emphasis in original) (holding a federal court should give preclusive effect to Trademark Trial and Appeal Board decisions if ordinary elements of issue preclusion are met).[4] Additionally, an agency's adjudication can permit issue preclusion if the agency adjudicates within its authority. *B & B Hardware, Inc.*, 575 U.S. at 156 n.4. Here, the PTAB

---

[4] The Trademark Trial and Appeal Board and the Patent Trial and Appeal Board are both appellate review boards in the United States Patent and Trademark Office.

6

1  adjudicated the validity of claim 145 within its authority. The IPR ended with a final judgment on
2  the merits which was affirmed by the Federal Circuit.

3  --**Privity.** Here, Chrimar was a party in the IPR and is a party in the instant suit. Dkt. No.
4  144 at 5 (Defs' '760 MSJ). Thus, Chrimar meets the privity requirement.

5  **--Identicality of Issues.** The IPR, in relevant part, determined original claim 73 and 145 in
6  the '760 patent were obvious in light of prior art. Dkt. No. 144 at 9 (Defs' '760 MSJ). The instant
7  dispute relates to the validity of amended claim 145. Dkt. No. 149 at 6 (Opp. to '760 MSJ). As
8  discussed below, defendants argue that because amended claims 73 and 145 are substantively
9  similar to the original claims which were invalided by the IPR's final written decision, the Court
10 should preclude Chrimar from relitigating the same issue. Chrimar concedes the IPR found original
11 claims 73 and 145 invalid, but distinguishes the instant dispute, arguing the IPR did not concern
12 *amended* claim 145 which has different limitations. Dkt. No. 149 at 8; *see* Dkt. No. 144 at 3-4
13 (amended claim 145 no longer depends on claims 101-103).

14 This argument is unpersuasive. As a procedural matter, the *Roche Palo Alto LLC* court
15 indicates the relevant "issue" is the patent validity itself. *Roche Palo Alto LLC*, 526 F. Supp. 2d at
16 994–95 (N.D. Cal. 2007) (citing *Applied Medical Resources Corp. v. U.S. Surgical Corp.,* 352
17 F.Supp.2d 1119, 1124–26 (C.D. Cal. 2005)) (using Ninth Court issue preclusion precedent in a
18 patent matter involving issue preclusion). Here, the inquiry relates to the validity of the '760
19 patent's 145 claim. Thus, as a procedural matter, the IPR could have preclusive effects based on
20 the application of substantive Federal Circuit precedent.

22 **B.  Substantive Application of Federal Circuit Precedent**

23 Defendants argue the IPR and the instant suit involve identical issues. Dkt. No. 144 at 9
24 (Defs' '760 MSJ). Chrimar asserts the IPR did not reach the controversy in the instant suit because
25 amended claim 145 was not at issue in the IPR proceeding. Dkt. No. 149 at 8, 14 (Opp. to '760
26 MSJ). Chrimar argues the IPR decision does not preclude it from asserting an infringement cause
27 of action based on claim 97+145 which has limitations based on claims 73, 95, 96, and 97. Dkt.
28 No. 149 at 11 (Opp. to '760 MSJ). Chrimar argues defendants must show the Hunter/Bulan

7

1   combination discloses the specific limitations in 97+145. Dkt. No. 149 at 11 (Opp. to '760 MSJ).

2   Chrimar's argument is not persuasive. "[The Federal Circuit] does not limit [issue
3   preclusion/] collateral estoppel to patent claims that are identical. Rather, it is the identity of
4   the *issues* that were litigated that determines whether collateral estoppel should apply." *Ohio*
5   *Willow Wood Co.*, 735 F.3d at 1342 (citing *Bourns, Inc. v. U.S.,* 537 F.2d 486, 491
6   (1976); *Westwood Chem., Inc. v. U.S.,* 525 F.2d 1367, 1372 (1975)). "If the differences between
7   the unadjudicated patent claims and adjudicated patent claims do not materially alter the question
8   of invalidity, collateral estoppel applies." *Ohio Willow Wood Co.*, 735 F.3d at 1342 (citing
9   *Bourns,* 537 F.2d at 493). Here, unadjudicated amended claim 145 and the adjudicated claim 145
10  have two differences. First, amended claim 145 no longer depends on claim 101-103. Dkt. No. 144
11  at 3-4 (Defs' '760 MSJ). Amended claim 145 reads:

> The BaseT Ethernet system according to any one of claims 73, 82-91, 94-100, 104-107, 108-121, 127-132, 134-139, or 140-144 wherein the piece of BaseT Ethernet terminal equipment is a powered-off piece of BaseT Ethernet equipment.

15  Dkt. No. 144 at 3-4 (Defs' '760 MSJ). Original claim 145 included claims 101-103 in the original
16  claim language. *Id.* Second, amended claim 145 depends on *amended* claim 73. *Id.* at 3. The IPR
17  has preclusive effects because these differences do not materially alter the question of invalidity.

18  The fact that amended claim 145 is no longer dependent upon claims 101-103 does not
19  materially alter the subject matter of amended claim 145. A multiple-dependent claim, like the
20  original and amended claim 145, may be dependent on different claims but their subject matter stays
21  the same. The differences between the claims is amended claim 145 excludes 3 claims. *Id.* at 3-4.
22  The IPR determined original claim 145 was obvious based on prior art and therefore invalid. Dkt.
23  No. 144 at 5 (Defs' '760 MSJ). A patent claim is invalid for obviousness "if the differences between
24  the subject matter sought to be patented and the prior art are such that the **subject matter as a whole**
25  would have been obvious at the time the invention was made to a person having ordinary skill in the
26  art . . . ." 35 U.S.C. § 103 (emphasis added). Thus, the IPR determined original claim 145's subject
27  matter, as a whole, was invalid based on Hunter and Bulan. The subject matter as a whole of
28  amended claim 145 and original claim 145 are not materially different - both relate to BaseT

1 Ethernet systems. Dkt. No. 144 at 9 (Defs' '760 MSJ).

2 Additionally, amended claim 145's dependency on amended claim 73 does not materially alter the question of invalidity. Amended claim 73 adds the limitation:

*the piece of central network equipment is a BaseT Ethernet hub*

Dkt. No. 144 at 9 (Defs '760 MSJ) (emphasis added). This added limitation does not materially alter the question of invalidity because the PTAB determined Hunter meets this limitation when the PTAB invalidated claim 1 of the original '760 patent. Dkt. No. 144 at 9 (Defs' '70 MSJ); Dkt. No. 144-5, *Exhibit 2* at 18 (IPR Final Written Decision). Specifically, Hunter teaches:

> *a 10Base-T Ethernet system with a piece of central 10Base-T Ethernet equipment, such as a hub,* and a piece of 10Base-T Ethernet terminal equipment, such as an Integrated Services Terminal Equipment ("ISTE") device.

Dkt. No. 144-5, *Exhibit 2* at 18 (emphasis added) (IPR Final Written Decision).

Ultimately, like the patentee in *Soverain Software LLC*, Chrimar has "failed to explain how the additional limitations would change an invalidity analysis" and has "not met its burden in opposing summary judgment." *Soverain Software LLC*, 778 F.3d at 1319 (citing *Ohio Willow Wood Co.*, 735 F.3d at 1343). Thus, Chrimar is precluded from re-litigating the validity of the '760 patent and the defendants' motion regarding the '760 patent is GRANTED.

**DISCUSSION RE ISSUE 2**
**Motion for Summary Judgment on U.S. Patent 9,812,825**

In patent infringement suits, the party claiming infringement must give notice to the alleged infringer to recover damages pursuant to 35 U.S.C. § 287. A party claiming infringement may give constructive notice or actual notice. *Id.* Constructive notice requires markings of the patented articles. *Id.* "Actual notice requires the affirmative communication of a specific charge of infringement by a specific accused product or device." *Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 187 (Fed. Cir. 1994). Here, Chrimar's basis for notice is a letter sent to each of defendants' counsel. Dkt. No. 146 at 6 (Defs' '825 MSJ); *See* Dkt. No. 108 ¶ 51 (TAC) ("Juniper has been on notice of the '825 Patent since at least as early as March of 2019."). Thus, the Court must determine whether Chrimar's letter constituted actual notice regarding the '825 patent.

"To serve as actual notice, a letter must be sufficiently specific to support an objective understanding that the recipient may be an infringer." *Funai Elec. Co. v. Daewoo Elecs. Corp.*, 616 F.3d 1357, 1373 (Fed. Cir. 2010) (citing *Gart v. Logitech, Inc.,* 254 F.3d 1334, 1346 (Fed. Cir. 2001)). Actual notice "is satisfied when the recipient is informed of the identity of the patent and the activity that is believed to be an infringement . . . ." *SRI Int'l, Inc. v. Advanced Tech. Labs., Inc.*, 127 F.3d 1462, 1470 (Fed. Cir. 1997). A patentee's communication is "sufficient specificity" based on the action of the patentee. *Gart*, 254 F.3d at 1346.

Chrimar argues the letter provides sufficient notice of a specifically accused product or device. Dkt. No. 148 at 9 (Opp. to '825 MSJ). Chrimar's letter states defendants "infringe[] U.S. Patent No. 9,812,825 ("the '825 patent," attached)," thus identifying the patent number and attaching the patent to the notice letter. *Id.* In a vacuum, Chrimar's letter seems sufficiently specific to support an objective understanding that the recipient may be an infringer. *See U.S. Philips Corp. v. Iwasaki Elec. Co. Ltd.*, 505 F.3d 1371, 1375 (Fed. Cir. 2007) (A finding of actual notice where a copy of the front page of the patent was attached to the letter). However, the circumstances surrounding the notice influence the analysis. *Nike, Inc. v. Wal-Mart Stores, Inc.*, 138 F.3d 1437, 1446 (Fed. Cir. 1998) (citing *Amsted*, 24 F.3d at 187)) ("In determining whether the patentee marked its products sufficiently to comply with the constructive notice requirement, the focus is not on what the infringer actually knew, but on whether the patentee's actions were sufficient, in the circumstances, to provide notice *in rem.*").[5]

Defendants argue Chrimar's letter does not sufficiently identify a specific charge of infringement. Dkt. No. 146 at 11 (Defs' '825 MSJ). Chrimar "listed 98 different Juniper products and asserted generally and without explanation that all 98 infringed 'one or more' of the 68 claims of the '825 Patent." *Id.* Under these circumstances, defendants argue Chrimar's vague assertion

---

[5] *Nike, Inc.* explains how the circumstances impact the analysis in the constructive notice setting. *Nike, Inc. v. Wal-Mart Stores, Inc.*, 138 F.3d at 1446. *Nike, Inc.*'s explanatory parenthetical from *Amsted* states: "The correct approach to determining notice under section 287 must focus on the action of the patentee, not the knowledge or understanding of the infringer." *Nike, Inc.*, 138 F.3d at 1446 (citing *Amsted*, 24 F.3d at 187). Under *Nike, Inc.*, the circumstances surrounding actual notice influences the determination.

1    that 98 accused products violate any one of the 68 claims in the '825 patent does not provide actual
2    notice. *Id.* "Chrimar's letter [leaves defendants] to guess which of the 68 patent claims Chrimar
3    believed were infringed by each of the 98 listed products."

4    The Court agrees with defendants. Chrimar's "shotgun approach" improperly shifts the
5    notice burden to the accused infringer. *Gart*, 254 F.3d at 1346. Chrimar's letter fails to provide
6    enough detail to support an objective understanding of the specific charge of infringement. Under
7    these circumstances, defendants would have to determine which of the 68 patent claims were
8    infringed by the 98 listed products resulting in a systematic review of each patent claim against each
9    accused product[6] totaling 6,664 different infringement combinations.[7]

10   Chrimar's letter is void of any language narrowing the different infringement combinations.
11   *See* Dkt. No. 146 at 8 (Defs' '825 MSJ). Nor did Chrimar offer any explanation of why Chrimar
12   believed any of defendants' products might infringe the '825 patent. This type of information could
13   help a defendant be "informed of the . . . activity that is believed to be an infringement." *SRI Int'l,*
14   *Inc. v. Advanced Tech. Labs., Inc.*, 127 F.3d 1462, 1470 (Fed. Cir. 1997).

15   Chrimar argues the notice letter in *SRI Int'l, Inc.* mirrors Chrimar's notice letter. *Compare*
16   *SRI Int'l, Inc.*, 127 F.3d at 1469–70 ("products Models Ultramark 4 and 8 may infringe one or more
17   claims of U.S. Patent No. 4,016,750") *with* Dkt. No. 146 at 8 ("infringe at least one claim of the
18   '825 patent") (Defendants' '825 MSJ). However, *SRI Int'l, Inc.* involved a patent with 18 patent
19   claims and 2 infringing products. *SRI Int'l, Inc.*, 127 F.3d at 1469–70. Here, there are 68 patent
20   claims and 98 products. Dkt. No. 146 at 11 (Defendants' '825 MSJ). Actual notice can occur in an
21   infringement suit relating to 98 accused products with a patent that has 68 claims, but to do so
22   requires more than barebones allegations. Chrimar has not put defendants on actual notice.

23   Additionally, "the district court cannot enjoin [a party] from infringing an expired patent."

---

[6] Netgear had 70 accused products. Fortinet had 47 accused products. Ruckus had 32 accused products. Dkt. No. 146 at 6 n.2 (Defs' '825 MSJ).

[7] 68 claims multiplied by 98 products equals 6,664 different infringement combinations. Netgear would have 4760 different infringement combinations (68 claims multiplied by 70 products). Fortinet would have 3196 different infringement combinations (68 claims multiplied by 47 products). Ruckus would have 2176 different infringement combinations (68 claims multiplied by 32 products).

*Lans v. Digital Equip. Corp.*, 252 F.3d 1320, 1328 (Fed. Cir. 2001). Here, the '825 patent expired on May 23, 2019. Dkt. No. 146 at 8 (Defendants' '825 MSJ). As a matter of law, Chrimar is not entitled to damages pursuant to 35 U.S.C. § 287, due to the lack of notice, or injunctive relief, because the patent is expired. Thus, defendants' motion regarding the '825 patent is GRANTED.

## CONCLUSION

The Court GRANTS defendants' Motion for Summary Judgment on the '760 patent.

The Court GRANTS defendants' Motion for Summary Judgment on the '825 patent.

**IT IS SO ORDERED**.

Dated: July 31, 2020

_____
SUSAN ILLSTON
United States District Judge